UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **DONALD RANDOLPH WAESCHE,** | : | |
| **BONITA L. WAESCHE, AND** | : | |
| **ARA PACIS, LLC,** | : | CIVIL ACTION |
| | : | NO.: 3:14-CV-01902-JAM |
| **Plaintiffs,** | : | |
| v. | : | Honorable Jeffrey A. Meyer |
| | : | |
| **NEW LONDON MARITIME** | : | |
| **SOCIETY, INC. AND UNITED** | : | |
| **STATES OF AMERICA,** | : | |
| | : | August 25, 2016 |
| **Defendants.** | : | |

**DEFENDANTS' JOINT REPLY TO
PLAINTIFFS' OBJECTION TO MOTION TO DISMISS**

The Defendants, New London Maritime Society, Inc. ("NLMS") and the United States of America ("United States"), respectfully submit this reply to the Plaintiffs' Objection to the Defendants' Joint Motion to Dismiss.  While some of the grounds in the Motion to Dismiss are now either cured or mooted due to the filing of the Plaintiffs' Amended Complaint, the Plaintiffs have still failed to adequately plead a claim under the Federal Quiet Title Act and, as such, their action should be dismissed.

**GROUNDS TO DISMISS CURED BY THE AMENDED COMPLAINT**

(a)    Failure to Plead that the United States Waived Sovereign Immunity

The Defendants concede that their first ground for dismissal, namely that the United States is an indispensable party and that the Plaintiffs' had pled no statute that might signify that the United States had waived its sovereign immunity, has been cured by the Plaintiffs' Amended

Complaint ¶ 9, in which the Plaintiffs correctly note that "[i]n accordance with 28 U.S.C. Section 2409a(a), the United States may be named as a party in a civil action involving a title dispute in which the United States claims an interest."

(b)     Federal Law Preempts Local Zoning Regulations

The Defendants also concede that their fourth ground for dismissal, namely that the Plaintiffs' claim that local zoning regulation of NLMS's Lighthouse Property is preempted by federal law, has been cured by the Plaintiffs' withdrawal of all counts except their request for "judgment quieting title to the disputed boundary between the [Plaintiffs'] Property and the Society's parcel." Amended Complaint ¶ 13.

(c)     Failure to Plead the United States' Interest in the Property

The Defendants concede further that their second ground for dismissal, namely that the Plaintiffs failed to adequately plead with particularity the United States' interest in the disputed property along the boundary between the Lighthouse Property and the Plaintiffs' parcel as required by 28 U.S.C. § 2409a(d), has been cured by the Plaintiffs' Amended Complaint, albeit in a tortured manner.

In the Plaintiffs' Amended Complaint ¶ 9, the Plaintiffs state that "[i]n accordance with 28 U.S.C. Section 2409a(d), any right, title, or interest claimed by the United States is by virtue of the restrictions contained in the deed to [NLMS]." While not spelled out in the Amended Complaint, the United States' *current* interest in the Lighthouse Property, which includes the disputed property which the Plaintiffs claim to own, is thoroughly delineated in the deed transferring title to NLMS, which the Amended Complaint references. These interests include the right to access, at any time, "all portions of the [Lighthouse] Property for environmental

investigation, remediation or other corrective action.  *See* Exhibit A to the Defendants' Memorandum of Law in Support of Defendants' Joint Motion to Dismiss at 3-4, D.I. 25-1.  The Untied States also, *inter alia*, retains a reversionary interest in the Lighthouse Property should NLMS fail to meet certain requirements, such as making the Lighthouse Property available for the education of the general public.  *Id.* at 8-9.

In addition, the Plaintiffs correctly note that NLMS acquired the Lighthouse Property from the United States in October 2009.  Amended Complaint ¶ 7.  The Plaintiffs also correctly note that there is a survey from Dieter & Gardner Land Surveyors dated March 2007 entitled "Plan Showing Property of United States of America, Pequot Avenue, New London, Connecticut" (the "2007 Survey").  *Id.* ¶ 6.  As acknowledged by the Plaintiffs, the United States was the Lighthouse Property owner in March 2007, as it had not yet transferred the Lighthouse Property to NLMS, and the 2007 Survey and deed to NLMS clearly show that the boundary between the Lighthouse Property and the Plaintiffs' property is *not* along the face of the brick wall, as alleged by the Plaintiffs, but is rather north of and parallel to the brick wall towards the Plaintiffs' property.  Therefore, the United States' interest in the Lighthouse Property (as fee owner and then holder of reversionary interests) covers the entire parcel, including the area in dispute in this litigation.

Thus, although not plainly stated, the Plaintiffs do appear to have shown, through their allegations or by reference to other documents, the United States' interest in the Lighthouse Property as its former owner in fee and current holder of reversionary interests.  The Defendants therefore concede that the Plaintiffs have cured the Defendants' second ground for dismissal.

**GROUNDS FOR DISMISSAL NOT CURED BY AMENDED COMPLAINT**

What the Plaintiffs have *not* cured is the Defendants' third ground for dismissal, namely that the Plaintiffs' fail to adequately plead the date their cause of action accrued, in violation of 28 U.S.C. § 2409a(g), or that they have complied with the 12-year statute of limitation in that section.

Although the Plaintiffs now plead a date of accrual in paragraph 1 of the Amended Complaint, that sentence simply states, "The plaintiffs' cause of action accrued pursuant to 28 U.S.C. Section 4209a(g) [sic] on or about October 21, 2013." That allegation is inadequate for the following reasons. First, the sentence containing the Plaintiffs' date of accrual does not describe what event it is referring to or what event triggered the accrual of the Plaintiffs' cause of action. Thus, the Court has no way of knowing *why* this is the Plaintiffs' date of accrual. The sentence immediately preceding the date of accrual sentence discusses NLMS purportedly building of a concrete walkway on the Plaintiffs' property, and the sentence immediately following discusses NLMS's purported violations of zoning regulations. The placement of the date of accrual sentence between these other two sentences seems to suggest that it was either NLMS's alleged invasion of the Plaintiffs' property or its purported violation of zoning laws that caused the Plaintiffs' cause of action to accrue. However, neither event is a proper trigger for the accrual of a federal quiet title action and the Plaintiffs make no other allegations to support a finding that it has complied with the statute of limitations in the Federal Quiet Title Act.

Under 28 U.S.C. § 2409a(g), a federal quiet title cause of action accrues "on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." Whether NLMS purportedly invaded the Plaintiffs' property or purportedly violated

4

local zoning regulations is simply irrelevant to the Plaintiffs' date of accrual under 28 U.S.C. § 2409a(g), which only looks to when the Plaintiffs or their predecessors-in-interest "knew or should have known of ***the claim of the United States***." *Id.* (emphasis added); s*ee also Saylor v. United States*, 315 F.3d 664, 670-71 (6th Cir. 2003) ("the [Federal Quiet Title Act] asks when it was reasonable for plaintiffs to know of the United States' claim, not their own claim.  This distinction is deliberate and reflects 'a clear congressional judgment that the national public interest requires barring stale challenges to the United States' claims to real property, whatever the merit of those challenges.'") (quoting *United States v. Mottaz*, 476 U.S. 834, 851 (1986)).

The fact that the Amended Complaint does not allege facts to support a finding that the Plaintiffs' action is timely is fatal to the Plaintiffs' sole remaining claim, as the 12-year statute of limitations of 28 U.S.C. § 2409a(g) is jurisdictional, meaning that the Court must dismiss the case if the statute of imitations has run.  *See N. New Mexicans Protecting Land & Water Rights v. United States*, No. CIV 15-0559 JB/LF, 2016 U.S. Dist. LEXIS 16644, at * 37 (D.N.M. Jan. 30, 2016) ("A plaintiff's claim being timely under this statute of limitations is a jurisdictional prerequisite to suit under 28 U.S.C. § 2409a) (citing *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983)); *Kingman Reef Atoll Investments, LLC v. United States*, 541 F.3d 1189, 1195-96 (9th Cir. 2008) ("KRAI argues first that the [Federal Quiet Title Act's] limitations period is not a jurisdictional limitation on a court's authority.  We disagree.  The running of the twelve-year limitations period deprives the federal courts of 'jurisdiction to inquire into the merit' of an action brought under the [Federal Quiet title Act].") (quoting *Block*, 461 U.S. at 292); *Spirit Lake Tribe v. N. Dakota*, 262 F.3d 732, 737-38 (8th Cir. 2001) (explaining that because the Federal Quiet Title Act waives the government's sovereign

immunity, the statute of limitations must be affirmatively pled by the plaintiff, rather than simply asserted as an affirmative defense as in most cases).[1]  In addition, "[t]he twelve-year limitations period is strictly construed in favor of the United States." *N. New Mexicans*, 2016 U.S. Dist. LEXIS 16644, at *37.

To the extent that the Amended Complaint *does* address when the Plaintiffs or their predecessors-in-interest knew or should have known of the United States' claim to the disputed property between the two parcels, it strongly implies that the Plaintiffs' predecessors-in-interest knew of the United States' interest in the disputed property for far longer than the 12 years prior to when the Plaintiffs brought suit, keeping in mind that up until 2009, the interest of the United States was not just reversionary, but actual fee ownership of the Lighthouse Property.  For example, in the Amended Complaint, the Plaintiffs state that:

> The genus of the instant dispute originated prior to the time the defendant United States of America was a country.  At that time the Colony of Connecticut was granted land along what is now Pequot Avenue where [NLMS's] parcel and the lighthouse are now situated.  The doctrine of practical location has governed the relationship between the plaintiffs and their Property and their predecessors in title and [NLMS's] predecessors in title [i.e. the United States].

Amended Complaint ¶ 10.  For the doctrine of practical location to even apply, the affected property owners must concede that the record boundary lines differ from the agreed-upon lines.[2]

*See* 10 THOMPSON ON REAL PROPERTY § 90.03(a)(2) (3d Thomas ed. 2013) ("In many

---

[1]  The Defendants apologize to the Court for characterizing, in their Joint Motion to Dismiss, a violation of 28 U.S.C. § 2409a(g) as a failure to state a claim for which relief can be granted under Rule 12(b)(6). Further research has revealed that, as stated in the accompanying text above,  this is a matter of the Court's subject matter jurisdiction, more appropriately brought under Rule 12(b)(1).

[2]  The Defendants strongly disagree with the Plaintiffs' allegation that the doctrine of practical location should determine the boundary in this matter or that it is even a cognizable doctrine in Connecticut; however, since it has been pled by the Plaintiffs as the basis for their claim, it is appropriate to note the implications of making such a claim on the date of accrual under the Federal Quiet Title Act.

jurisdictions, landowners may agree with one another as to their boundaries *in disregard of their deeds*, and in a way that binds themselves and their successors.  This is called "practical location.") (emphasis added).  The boundary as described in the deed to NLMS, which references the 2007 Survey and shows the boundary north of the brick wall, does not support the allegation that the United States agreed with any of the Plaintiffs' predecessors-in-interest to a boundary other than that provided by its deeds.  If the United States had done so, why would it convey the entire parcel as shown on the 2007 Survey to NLMS.  Moreover, claiming that the doctrine of practical location even applies in this matter includes a tacit admission that the agreed upon boundary line is different than the boundary line contained in the parties' deeds, which requires that both parties to the boundary line agreement know the true boundary and interests of the other party.  As such, the invocation of the doctrine of practical location by the Plaintiffs, based upon an agreement that potentially goes back to the time of the American Revolution, undermines their claim that they brought this action within the 12-year period required by the Federal Quiet Title Act.

In paragraph 10 of the Amended Complaint, which invokes the doctrine of practical location, the Plaintiffs implicitly concede that their predecessors-in-interest knew of the United States' deeded claims as far back as the American Revolution, or well over 200 years ago.  This, therefore, is the Plaintiffs' true date of accrual, or "the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." 28 U.S.C. § 2409a(g).  Because of this, the 12-year statute of limitations of 28 U.S.C. § 2409a(g) has long since passed, and whether it did so before the passage of the Federal Quiet Title Act is immaterial.  *See Kingman*, 541 F.3d at 1197 (holding the Federal Quiet Title Act's  "statute of limitations applies

7

retroactively, so it is irrelevant whether KRAI's predecessors in interest, the Fullard-Leo family, was put on notice of the United States' interest before or after the enactment of the [Federal Quiet Title Act]."). *See also F.E.B. Corp. v. United States*, 818 F.3d 681, 685-87 (11th Cir. 2016) (discussing the Federal Quiet Title Act in detail and affirming dismissal of plaintiff's Federal Quiet Title action when the plaintiffs predecessor-in-interest had notice of the United States' interest in a disputed island); *Fid. Exploration & Prod. Co. v. United States*, 506 F.3d 1182, 1186 (9th Cir. 2007) (affirming dismissal when plaintiff's predecessor-in-interest knew of United States' claim).

Moreover, documents referenced in the Amended Complaint support a finding that the Plaintiffs or their predecessors-in-interest knew or should have known about the claim of the United States far more than 12 years before the Plaintiffs brought this action. For example, the deed of transfer between the United States and NLMS cited in Amended Complaint ¶ 7 contains a property description of the Lighthouse Property that does not mention the property boundary as running along a brick wall of a former building, which is the boundary claimed by the Plaintiffs to have been agreed upon by their predecessors-in-interest and the United States since the American Revolution. Rather, it specifically describes the boundary between the Lighthouse Property and the property of Plaintiffs' predecessors-in-interest, Irving and Muriel Castle, by metes and bounds, beginning at an iron pipe on the edge of Pequot Avenue, running 113.33 feet at a certain angle to a granite post, and then 84.4 feet at a slightly different angle to the high water line of New London Harbor. *See* Exhibit A to the Defendants' Memorandum of Law in Support of Defendants' Joint Motion to Dismiss at 1 ("Exhibit A"). Later in the deed, it recites that the Lighthouse Property was conveyed to the United States by three parties. *Id.* at 9. These

deeds of transfer, found later in Exhibit A, show dates of conveyance in the 1700s and 1800s, and describe the property boundary. Obviously the Plaintiffs and/or their predecessors-in-interest were aware, or should have been aware, of these documents, which show the United States' interest in the disputed property.

Additionally, the 2007 Survey mentioned in Paragraph 6 of the Amended Complaint is specifically referenced in the deed from the United States to NLMS, and shows the boundary line north of the brick wall (labelled as "Retaining Wall") on the Lighthouse Property. Furthermore, the 2007 Survey notes as map references "New London Harbor Lt. Sta., New London County Conn., Latitude 41"-19'-00', Longitude 72'-05'-24.4", Scale 1"z=3-', by R.S. Lamb, Assistant Lighthouse Engineer of the Office of the Superintendent of Lighthouse, Third District, Staten Island, N.Y., October 22, 1927, Revised 12-4-27" (the "1927 Survey") and "Plan Showing Property of United States of America, Pequot Avenue, New London, Connecticut, Scale 1"=10' April 1982" (the "1982 Survey")[3] (copies of all surveys attached as Exhibits A-C). Plaintiffs were obviously aware of the 2007 Survey, as they cited it in their Original Complaint ¶ 6 and their Amended Complaint ¶ 6, and were therefore on notice regarding the existence of the 1927 Survey and 1982 Survey. The 1927 Survey, conducted by the Superintendent of Lighthouses, shows the boundary roughly where the 1982 Survey and 2007 Survey show it, and none of the surveys show the boundary along the brick wall of a building on the Lighthouse Property.[4]

---

[3] The 1982 Survey also references the 1927 Survey as a map reference. The Defendants understand that these surveys were not recorded on the New London land records, but note that the 1927 Survey is a public record and was clearly available to those who sought information about the Lighthouse Property, since it was referenced in the 1982 Survey by Dieter & Gardner Land Surveyors.

[4] Although normally a court will not credit documents outside the pleadings on a motion to dismiss, this rule is inapplicable to motions brought under Rule 12(b)(1) challenging the court's subject matter jurisdiction. *See Chesapeake Bay Found. v. Severstal Sparrows Point*, 794 F. Supp. 2d 602, 610 (D. Md.

These surveys show that from 1927, at a minimum, the United States did not consider the brick wall to be the property boundary, but instead claimed ownership of the disputed area at issue in this lawsuit.

In addition, the chain of title for the Plaintiffs' property, including the property description in the deed by which the Plaintiffs took ownership of the property, serves notice that the United State has continually claimed an interest in the entire Lighthouse Property. Paragraph 5 of the Amended Complaint states, in part:

> Plaintiff Ara Pacis, LLC acquired the Property from Donald R. Waesche and Bonita Waesche by way of a deed dated July 5, 2012 and recorded in Volume 1977 Page 209 of the New London land records. The plaintiffs, Donald R. Waesche and Bonita Waesche, acquired the Property from Lawrence J. Greenberg, Trustee on March 19, 2012 as set forth in Volume 1960 Page 194 of the New London land records.

The property description in the Plaintiffs' most recent deed (copy attached as Exhibit D) simply states, in relevant part:

> All that certain piece of [sic] parcel of land, together with the buildings and improvements thereon situated, known as 800 Pequot Avenue and located in the Town of New London, County of New London and State of Connecticut, being more particularly bounded and described as follows, to wit:
>
> SOUTHERLY:   By land now or formerly of the United States of America;
>
> WESTERLY:    By the easterly line of Pequot Avenue;

---

2011) ("When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'") (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

| | |
|---|---|
| NORTHERLY: | By land now or formerly of the Quinnipeg Corporation; and |
| EASTERLY: | By the waters of New London Harbor. |

This same basic property description is contained in seven conveyances of the Plaintiffs' property going back to September 28, 1950, when it was first split off from a larger tract of land. This description does not mention a brick wall, but simply that the Plaintiffs' property only goes so far as the United States' property. "If the land described or a call for description is given by reference to abutting land or monuments, the description is good if the abutting lines can be accurately determined. The line of an adjacent tract of land is a monument well established." 10 THOMPSON ON REAL PROPERTY § 90.03(d)(7) (3d Thomas ed. 2013). Because this description is vague, a purchaser must investigate the location of the adjoining parcels in order to determine the boundaries of his land. In this matter, the northern boundary line of the Lighthouse Property can be "accurately determined." Such an investigation would likely lead to the 1927, 1982 and 2007 Surveys of the Lighthouse Property, which would show a visual depiction of the United States' claim to the entire Lighthouse Property. Even if the surveys were not found, the deeds by which the United States acquired the Lighthouse Property were recorded in the New London land records and would give notice of the United States' interest.

Therefore, the Plaintiffs' predecessors-in-interest knew or should have known of the United States' interest since far before 12 years before the Plaintiffs initiated their lawsuit. *See Vincent Murphy Chevrolet Co. v. United States*, 766 F.2d 449, 452 (10th Cir. 1985) ("[F]or purposes of determining when the claim accrues under § 2409a(f) [now § 2409a(g)], all that is necessary is ***a reasonable awareness*** that the government claims some interest adverse to the plaintiffs.") (emphasis added).

**CONCLUSION**

In summary, the Plaintiffs have failed to allege facts that demonstrate compliance with the 12-year statute of limitations in 28 U.S.C. § 2409a(g).  To the contrary, by their own admissions, by the documents they reference, and by other relevant evidence, it is clear that the Plaintiffs and their predecessors knew or should have known of the United States' interest in the disputed property for more than 12 years before the Plaintiffs brought suit.  For this reason, the Defendants' Motion to Dismiss must be granted because the Court is without subject matter jurisdiction to adjudicate the Plaintiffs' claim.

Respectfully Submitted,

| | |
|---|---|
| Defendant, | Defendant, |
| New London Maritime Society, Inc. | United States of America |
| | |
| | Deirdre M. Daly |
| | United States Attorney |
| | |
| */s/ John P. Casey* | */s/ Julie G. Turbert* |
| John P. Casey (ct21993) | Julie G. Turbert |
| James R. Nault (ct29500) | Assistant U.S. Attorney |
| Robinson & Cole LLP | Attorney Bar  # ct023398 |
| 88 Howard Street, Suite C-1 | 157 Church Street |
| New London, CT 06320 | New Haven, CT 06510 |
| Tel. No.:  (860) 275-8200 | Tel. No.:  (203) 821-3700 |
| Fax No.:  (860) 275-8299 | Fax No.:  (203) 773-5373 |
| E-mail:  jcasey@rc.com | E-mail:  Julie.Turbert@usdoj.gov |
| E-mail:  jnault@rc.com | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By */s/ John P. Casey*

John P. Casey (ct29500)
Robinson & Cole LLP
88 Howard Street, Suite C-1
New London, CT 06320
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
E-mail: *jcasey@rc.com*